1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8   Geary Wayne Walton,                    )    No.  CV 11-00578-PHX-ROS (SPL)
                                           )
9                                          )
                        Petitioner,        )    **REPORT AND RECOMMENDATION***
10  vs.                                    )
                                           )
11                                         )
    Charles L. Ryan, et al.,               )
12                                         )
                                           )
13                      Respondents.       )
                                           )
14  _____   )

15  TO THE HONORABLE ROSLYN O. SILVER, SENIOR UNITED STATES DISTRICT JUDGE:

16          On March 28, 2011, Petitioner Geary Wayne Walton, who is confined in the

17  Central Arizona Correctional Facility in Florence, Arizona, filed a copy of an Order

18  (Doc. 1) from the Ninth Circuit Court of Appeals granting Petitioner's application for

19  authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in

20  district court. Presently before the Court is Petitioner's Fourth Amended Petition for Writ

21  of Habeas Corpus pursuant to 28 U.S.C. § 2254.

22                                   **BACKGROUND**

23  **I.    State Proceedings**

24          **A.    Trial and Sentencing**

25          On November 5, 1987, Petitioner was indicted for eleven offenses in the Maricopa

26  County Superior Court ("Superior Court"), Case No. CR 87-09953. (Doc. 66-1, Exh. 1.)

27  In Count I of the indictment, Petitioner was charged with attempted sexual abuse,

28  alleging that between June 11 and June 14, 1987, he attempted to engage in direct or

_____

        ***This Report and Recommendation supersedes the former (Doc. 141) *nunc pro
tunc* to correct a typographical error only.

indirect fondling of T.W.,[1] a minor under the age of fifteen. Counts II-VIII charged sexual conduct with a minor, alleging that between June 11 and June 14, 1987, Petitioner engaged in oral sexual contact with K.V.I., a minor under the age of fifteen. In Counts IX and X, Petitioner was charged with sexual conduct with a minor, alleging that between June 11 and June 14, 1987, Petitioner engaged in oral sexual contact with T.W. Lastly, Count XI charged Petitioner with public sexual indecency, alleging that between June 11 and June 14, 1987, he recklessly engaged in an act of sexual contact in the presence of T.W., a minor under fifteen years of age. (Doc. 66-1, Exh. 1.)

On November 17, 1987, a second indictment was returned in the Superior Court, Case No. CR 87-10264. (Doc. 66-1, Exh. 2.) Counts I through IV of the indictment charged offenses against co-defendant Ray Green. In Counts V, VI, VII, and VIII, Petitioner was charged with sexual conduct with a minor, alleging that between May 15 and June 10, 1987, he had engaged in oral sexual contact with T.W.  In Count IX, he was charged with sexual conduct with a minor, alleging that on or about May 29, 1986, Petitioner had engaged in oral sexual contact with T.W. Counts X, XI, XII, and XIII, charged Petitioner with child prostitution, alleging that between May 15 and June 10, 1987, he knowingly used T.W. for purposes of child prostitution. (Doc. 66-1, Exh. 2.) The indictment was subsequently amended to include an allegation of a prior conviction, in that on August 11, 1977, Petitioner had been convicted of lewd and lascivious acts, a felony offense, Case No. CR 97176. (Doc. 66-1, Exh. 3.)

On February 18, 1988, the Superior Court consolidated CR 87-09953 and CR 87-10264, and Counts V, VI, VII, VIII, and IX in CR 87-10264 were then renumbered XII, XIII, XIV, XV, and XVI, so as to sequentially follow the Counts in CR 87-09953. (Doc. 66-1, Exh. 4 and 6.)[2] Counts XIII, XIV, and XV were subsequently dismissed (Doc. 66-1, Exh. 7), and Count XVI was renumbered as Count XIII to sequentially follow the

---

[1]    The minor victims referred to in this report and recommendation are identified by their initials.

[2]    In CR 87-10264, the Superior Court remanded Counts X-XIII to the grand jury. Those charges, however, were not refiled. (Doc. 66-1, Exh. 5.)

1  remaining Counts I through XII (Doc. 67-1 at 62, Exh. 37).

2      Following a six-day jury trial, on October 14, 1988, Petitioner was acquitted of

3  Counts VII, VIII, and XIII. He was found guilty of Count I (attempted sexual abuse),

4  Counts II, III, IV, V, VI, IX, and X (sexual conduct with a minor), Count XI (public

5  sexual indecency with a minor), and Count XII (sexual contact with a minor with a prior

6  predicate felony). (Doc. 66-3, Exh. 9.)  On October 17, 1988, the jury further found that

7  Petitioner had been convicted of the alleged 1977 offense. (Doc. 66-3, Exh. 10.)

8      Petitioner filed several *pro se* motions for a new hearing based on ineffective

9  assistance of counsel (Doc 66-3, Exh. 11), which were subsequently denied (Doc. 66-3 at

10  45, Exh. 12). On February 16, 1989, Petitioner was sentenced to an aggravated term of

11  fifteen years on Count I; a term of life without possibility of parole for thirty-five years

12  on Counts II, III, IV, V, VI, IX, and X; an aggravated term of six years on Count XI; and

13  an aggravated term of thirty-five years on Count XII. Each sentence was imposed to run

14  consecutively, a total of 301-years' incarceration.  (Doc. 66-3, Exh. 12; Doc. 66-4, Exh.

15  13.)

16      **B.    Direct Appeal**

17      On February 23, 1989, Petitioner timely filed a Notice of Appeal in the Arizona

18  Court of Appeals ("Appellate Court"). (Doc. 66-4 at 23, Exh. 14.) In his opening brief,

19  Petitioner raised three issues: (1) "[i]n sustaining an objection by the state at trial, did the

20  court deny his sixth-amendment right to confrontation"; (2) "[i]n sustaining the same

21  objection, did the trial court improperly comment on the evidence"; and (3) "[i]n the trial

22  on his prior felony conviction, did the court erroneously deny the jury's request for a

23  magnifying glass?" (Doc. 66-4 at 73, Exh. 17; *see also* Doc. 66-4, Exh. 14.) In a

24  memorandum decision filed on September 10, 1991, the Appellate Court affirmed

25  Petitioner's convictions and sentences. (Doc. 66-4, Exh. 17.) In doing so, it summarized

26  his case, in part, as follows:

27          In June 1987, defendant lived in a Glendale home with his
           daughter [T.W.], his girlfriend Jocelyn, and Jocelyn's
28          daughters [K.V.I.] and [K.V.II.]. While Jocelyn was at work,

3

defendant summoned [T.W.] and [K.V.I.] into his bedroom and performed various acts of oral sex with them both separately and together. Defendant injected himself with a syringe while the girls were in the bedroom with him. The following day, the girls revealed the incident to Jocelyn, who brought them to the police station.

[T.W.] testified about a previous incident that occurred while she was living with her aunt. Defendant took her to a house trailer occupied by Ray Green. Defendant ordered [T.W.] to allow Green to perform cunnilingus on her. She then was forced to perform fellatio on Green. On two occasions during this incident, she also was required to perform fellatio on defendant. Ray Green testified that [T.W.] performed oral sex on defendant and that defendant performed oral sex on [T.W.] as well.

The state also presented the testimony of two girls who stated that defendant forced them to perform oral sex upon him in 1977 when he lived with their mother. This incident was the basis of defendant's prior conviction for lewd and lascivious acts.

(Doc. 66-4, Exh. 17.)[3] Petitioner filed a Petition for Review, which the Arizona Supreme Court summarily denied on March 4, 1992. (Doc. 66-4, Exh. 18.)

### C. Post-Conviction Relief Proceedings

On March 13, 1989, Petitioner filed his first Petition for Post-Conviction Relief (Doc. 66-4, Exh. 15), and was appointed counsel. Petitioner argued that newly discovered evidence entitled him to a new trial, and presented evidence of medications that he was prescribed at the time of his offenses. The Superior Court dismissed the petition on August 1, 1989, and a subsequent request for rehearing on September 25, 1989. (Doc. 66-4, Exh. 16.) Petitioner sought review, and in a memorandum decision filed on September 10, 1991, the Appellate Court affirmed the Superior Court's decision. (Doc. 66-4, Exh. 17.)

Between January of 1992 and July of 1992, Petitioner filed a series of unsuccessful motions in the Superior Court, including a Writ of Habeas Corpus and

---

[3] Petitioner does not appear to contest the Appellate Court's recitation of the alleged facts. Therefore, the Court presumes the state court's factual determinations are correct because Petitioner has not "rebutt[ed] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Motion for Evidentiary Hearings, Motion to Amend and/or to Supplement at Later Date, Motion to Amend and/or to Supplement Petition For Writ of Habeas Corpus Requested Expedition, Motion to Amend/Supplement Petition for Post-Conviction Relief, and Motion to Supplement Petition of Ineffective Assistance of Counsels. (Doc. 66-5, Exh. 19.)  On July 20 1992, Petitioner filed a second post-conviction relief petition (Doc. 66-5 at 54, Exh. 19), which was withdrawn at Petitioner's request (Doc. 66-5 at 20).

In November of 1992, Petitioner again filed a series of unsuccessful motions in the Superior Court, including a Motion for Appointment of Defense Attorney (Doc. 66-6 at 12, Exh. 21), Motion of Ineffective Assistant of Counsel (Doc. 66-6 at 12, Exh. 17), Motion for Appointment of Experts (Doc. 66-6 at 24, Exh. 21), and Motion to Dismiss Hanna Priors (Doc. 66-6 at 28, Exh. 21). (Doc. 66-6, Exh. 21.)

Petitioner, proceeding *pro se*, filed a third post-conviction relief petition on November 27, 1992 (Doc. 66-6 at 2, Exh. 21), and a subsequent petition on December 9, 1992 (Doc. 66-6 at 41, Exh. 21). Although he was initially appointed counsel, Petitioner retained counsel who then filed an amended post-conviction relief petition on July 29, 1993. (Doc. 66-7, Exh. 22.) Petitioner, through counsel, argued:

> 1. Ineffective assistance of counsel. Defendant asserts that he was denied the effective assistance of counsel in every crucial stage of his "pretrial, his jury trial, at sentencing, in his appeal of the criminal conviction, and in his previous petitions for post conviction proceedings;[4]

---

[4]
> A. Defendant was denied effective assistance by his retained counsel because retained counsel was more interested in his fee than in assisting Defendant;
> B. Defendant was denied the effective assistance of counsel because his attorneys failed to pursue a Rule 11 request and failed to pursue a neurological examination of Defendant;
> C. Defendant's attorneys failed to "adequately investigate Defendant's medical history and the cause of his alleged psychotic behavior";
> D. Defendant's attorneys failed to obtain an expert witness to investigate Defendant's medical background;
> E. Defendant's right to effective assistance of counsel on appeal was hampered by a conflict of interest;
> F. Defendant was denied effective assistance of counsel at sentencing because his attorneys failed to request a mitigation hearing;

2. Defendant alleges that he was improperly sentenced to consecutive sentences based on his interpretation of A.R.S. S13-604(H);

3. Double jeopardy barred relitigation of Defendant's prior conviction;

4. Defendant had a medical problem and addiction to prescription medication which was not raised at trial;

5. Defendant was denied a substantial right because of the admission of prior bad acts at the trial.

(Doc. 66-7 at 2-4, Exh. 22.) In a decision filed on December 14, 1993, the Superior Court denied relief, finding that the claims were precluded from review or failed on their merits. (Doc. 66-7 at 16, Exh. 23.) Petitioner filed a motion for rehearing and motion for reconsideration (Doc. 66-7, Exh. 23), which the Superior Court denied on March 10, 1994 (Doc. 66-7 at 47, Exh. 23).

Petitioner filed a Writ of Habeas Corpus for Special Action in the Superior Court on June 6, 1994, (Doc. 66-7 at 55, Exh. 26), a post-conviction relief petition on June 9, 1994 (Doc. 66-7 at 73, Exh. 26), an amended petition on June 17, 1994 (Doc. 66-7 at 87, Exh. 25), and an amended petition on June 29, 1994 (Doc. 66-7 at 92, Exh. 26), which the Superior Court consolidated and construed as Petitioner's fourth post-conviction relief proceedings. (Doc. 66-8, Exh. 27.) Thereby, Petitioner raised the following claims:

1. Petitioner's double jeopardy and ex post facto rights were violated when the court allowed evidence at trial of the child prostitution counts which had been remanded to the grand jury and upon which Petitioner was never re-indicted, and when the state used his prior conviction as evidence of guilt at trial.

2. The state "breached" its plea agreement in another cause number by mentioning the pled-out conviction at trial.

---

G. Defendant was denied the effective assistance of counsel in a prior Rule 32 petition because Defendant's counsel failed to adequately support an amended petition for Rule 32 relief.

(Doc. 66-7 at 3, Exh. 22.)

6

3. Petitioner's trial counsel was ineffective for failing to hire expert witnesses and for not precluding evidence of the plea agreement at trial.

4. The trial court misused aggravating circumstances at sentencing.

(Doc. 66-8 at 24, Exh. 30.) On August 18, 1994, the Superior Court denied relief, finding that the claims were precluded from review. (*See* Doc. 66-8, Exh. 27.)

Petitioner appealed the Superior Court's decisions on his third[5] and fourth petitions, and in an order dated December 19, 1994, the Appellate Court denied review. (Doc. 66-7, Exh. 24; Doc. 66-8, Exh. 28.) He then filed a petition for review, which the Arizona Supreme Court summarily denied on July 3, 1995. (Doc. 66-7, Exh. 25; Doc. 66-8, Exh. 29.)

On October 21, 1996, Petitioner filed a *pro se* Notice of Post-Conviction Relief, and his fifth Petition for Post-Conviction Relief on October 26, 1996. (Doc. 67-2, Exh. 38.) On or about December 2, 1996, Petitioner filed an amended post-conviction relief petition. (Doc. 67-2 at 38, Exh. 38.) Petitioner argued that he was entitled to be resentenced or to have his release date recalculated based on *State v. Tarango*, and was alternatively entitled to relief on the following grounds:

(1) violation of the right not to be placed twice in jeopardy for the same offense; (2) the abridgment of any right guaranteed by the constitution or the laws of the this state, or the Constitution of the United states, including a right that was not recognized as existing at the time of the trial if retrospective application of that right is required, (3) the use by the state in determining sentence of a prior conviction obtained in violation of the united States of Arizona Constitutions and (4) sentence imposed other than in accordance with the sentencing procedures established by rule or statute.

(Doc. 67-2 at 48-49, Exh. 39.) In a decision filed on May 2, 1997, the Superior Court denied relief, finding that the claims were precluded from review or failed on their merits. (Doc. 67-2, Exh. 39.) Thereafter, Petitioner filed a Petition for Special Action, which the

---

[5]   The Arizona Supreme Court cites, by typographical error, that the third petition was filed on November 27, 1993. (Doc. 66-8, Exh. 28.)

Appellate Court summarily denied on June 5, 1997. (Doc. 67-2, Exh. 40.)

On September 11, 2000, Petitioner filed his sixth post-conviction relief petition, and Motion Requesting DNA Fingerprinting, in which he requested "any all victim(s) medical records since they've been in the world." (Doc. 67-2 at 64, Exh. 41.) In a minute entry dated November 10, 2000, the Superior Court dismissed the petition, finding that "[n]o newly discovered material facts have been presented which would entitle[] the defendant to Rule 32 relief. Mere speculation that 'DNA fingerprinting', which did not exist when the defendant was tried and sentenced, may change the verdict does not entitle a defendant to a Rule 32 hearing and relief." (Doc. 67-2, Exh. 42.) In December of 2000, Petitioner appealed the Superior Court's decision, and on September 21, 2001, the Appellate Court summarily denied review. (Doc. 67-3, Exh. 47.) He filed a Petition for Review in the Arizona Supreme Court on October 9, 2001, which was denied on December 13, 2001. (Doc. 67-3, Exh. 47.)

Concurrently, in December of 2000, Petitioner filed a Motion to Amend Supplemental PCR Petition under Significant Change in Law Motion to Amend PCR Petition and Supplement Jury Instruction Exhibits Inadvertently Missed, Motion to Supplement Amended PCR Petition for Reconsideration / Review, and Motion to Amend Supplemental Pleading in Petition for Post-Conviction Relief, which the Superior Court denied in a minute entry dated May 22, 2001. (Doc. 67-3, Exh. 44.) Petitioner filed a Motion for Leave to Amend Reply to Respondent's Response (Doc. 67-3, Exh. 45), which the Superior Court treated as a motion for rehearing and summarily denied on June 14, 2001 (Doc. 67-3, Exh. 46.)

Petitioner filed a seventh post-conviction relief petition on April 10, 2002, in which he argued that newly discovered evidence established his innocence. (Doc. 67-4, Exh. 48.) In support of the petition, Petitioner attached an affidavit dated February 28, 2002, which was purported to be signed by T.W. and stated that "she was in fact, subject to medical examination involving the crime(s) of sexual conduct." (Doc. 67-4 at 19, Exh. 48.) Further, Petitioner claimed that he had recently obtained medical records that show

in 1994, he was reported to have Hepatitis C. He claimed that since Hepatitis C is a sexually transmitted disease that the victim did not have, Petitioner could not have sexually assaulted her in 1987. (Doc. 67-4, Exh. 49.) The Superior Court dismissed the petition on May 13, 2002, finding that Petitioner's claim did "not constitute newly discovered evidence that entitle[d] him to raise an untimely claim and to a hearing" and his other claim was precluded from review. (*Id.*) Petitioner appealed that decision, and on August 22, 2002, the Appellate Court denied review. (Doc. 67-4, Exh. 50.) The Arizona Supreme Court denied his following Petition for Review on December 16, 2002. (Doc. 67-4, Exh. 51.)

In February of 2004, Petitioner filed a Notice of Post-Conviction Relief and eighth post-conviction relief petition. (Doc. 67-4, Exh. 52.) Petitioner argued that trial and appellate counsel provided ineffective assistance, his sentences were unlawfully enhanced, and DNA testing would prove his innocence. Finding that the claims were previously raised in post-conviction proceedings and were precluded from review, the Superior Court dismissed the notice and petition on March 4, 2004. (Doc. 67-5, Exh. 53.) Petitioner filed a Petition for Review on May 28, 2004, which the Appellate Court denied as untimely on November 22, 2004. (Doc. 67-5, Exh. 54.)

In early 2004, Petitioner also filed a series of motions, including a Motion for Production of Court Records and DNA Evidence Pursuant to Rule 32.4(d), Motion for Reconsideration, Motion for Preparation and Production of Transcripts and Records, Motion for Reconsideration to Production of Court Records and DNA Evidence Under the Privacy Act and FOIA, Motion for Production of Victim Medical Record, Motion to Produce City of Phoenix Housing Department Records, and Motion to Produce Co-Defendant Ray Anthony Green's Medical and Psychiatric/Psychological Records, which the Superior Court denied in April, May, and July of 2004. (Doc. 67-5 at 21, Exh. 55; Doc. 67-5, Exh. 56 and 57.)

On May 13, 2004, Petitioner filed a Petition for Post-Conviction Deoxyribonucleic Acid Testing (Doc. 67-5, Exh. 55). He argued that "the DNA testing [would] show that

Petitioner is not the donor of the biological material found on the carpet, floor, papertowel, or victims... [t]he result of the DNA testing would provide that a large portion of the testimony of the victims was untruthful." (Doc. 108-8 at 7, Exh. H.) The petition was denied on May 19, 2004. (Doc. 67-5, Exh. 56.) On November 3, 2004, Petitioner appealed the Superior Court's decision; the Appellate Court dismissed the Petition for Review as untimely on November 8, 2004. (Doc. 67-5, Exh. 58.) Petitioner filed a Petition for Review on December 22, 2004, which the Arizona Supreme Court denied as untimely on December 29, 2004. (Doc. 67-5, Exh. 59.)

On January 4, 2005, Petitioner filed a Writ of Habeas Corpus in the Superior Court, which he supplemented on February 8, 2005. (Doc. 67-5, Exh. 60.) In the writ, Petitioner argued that because the "evaluation by Dr. Denise Schieffer shows in the victims medical record reports that no trauma was found with the victims in this case, whom Dr. Schieffer did in fact, examine and judge carefully" that it was an abuse of discretion for the trial court to admit the expert testimony of Dr. Harrison, who "gave false evidence to the jury of victims trauma." (Doc. 67-5 at 51, Exh. 60.) On or about March 9, 2005, Petitioner moved to consolidate the writ with a post-conviction relief notice. (Doc. 68-1, Exh. 62.) Petitioner then filed an Amended Notice of Post-Conviction Relief on March 29, 2005. (Doc. 67-6, Exh. 61.) In these sets of pleadings, Petitioner argued that trial, appellate, and post-conviction counsel provided ineffective assistance, he was subjected to illegal searches and/or seizures, his jury instructions were flawed, his Rule 20 motion for judgment of acquittal should have been granted, his sentences were unlawfully enhanced, DNA testing would prove his innocence, and *Blakely v. Washington*, 542 U.S. 296 (2004) constituted a significant change of law that applied to his case, entitling him to a jury determination of any facts that increased the penalty for his crime(s) beyond the prescribed statutory maximum. (*See* Doc. 68-1, Exh. 63.) Petitioner also attached a Sexual Abuse Medical Report of T.W., dated June 18, 1987. (Doc. 67-6 at 66, Exh. 61.)  Finding that the claims were precluded as having been previously raised, not cognizable, or without merit, the Superior Court dismissed the

proceedings on May 11, 2005. (Doc. 68-1, Exh. 63; Doc. 70-7 at 51, Exh. 116.) Petitioner sought reconsideration, which the Superior Court summarily denied on June 6, 2005. (Doc. 68-1, Exh. 63.)

In June, July, and August of 2005, Petitioner again filed a series of motions, including a Motion to Reinstate Plea Negotiations Under Significant Change of Law, Second Motion by Petitioner Requesting Court to Recall Its Minute Entry/Mandate and Request for Time Extension, Motion to Clarify Petitioner's Request to Extend Time For Filing For Review, Motion to Amend Memorandum Pleading for Appropriate Relief, and Motion Requesting Court Appointed Defense Counsel. (Doc. 68-2, Exh. 64; *see also* Doc. 70-7, Exh. 116.) In a minute entry filed on August 19, 2005, the Superior Court denied all motions. (Doc. 68-3, Exh. 65; Doc. 70-7 at 36, Exh. 116.) Further, in August of 2005, Petitioner filed a Motion to Request Copy of Plea Agreement in CR 97176 and Record of Acceptance, Motion to Remand for New Trial and to Define Law to Enforce Rule 410 No Contest Plea, and Motion to Remand For New Trial With Option to Renegotiate Plea Agreement. (Doc. 68-3, Exh. 66.) The Superior Court denied these motions in a minute entry filed on October 13, 2005. (Doc. 68-3, Exh. 67.)

In October of 2005, Petitioner retained private counsel. (Doc. 68-3 at 43.) On February 15, 2006, Petitioner, through counsel, filed a Motion for Rehearing in Post-Conviction Action and Leave to File Amended Petition. (Doc. 68-1 at 36, Exh. 63.) Oral argument was held on April 14, 2006, and in a minute entry filed on April 21, 2006, the Superior Court denied the motions. (Doc. 68-1 at 78, Exh. 63.)[6]

On May 22, 2006, Petitioner filed a Petition for Review "seeking review of the 5/2/2005 thru 4/21/2006 Superior Court Minute Entry Order dismissing his Petition for Post Conviction Relief and the trial court's April 21, 2006 denied of his Motion for Rehearing." (Doc. 68-3 at 25, Exh. 68; Doc. 70-7, Exh. 116.) In an order filed on April 26, 2007, the Appellate Court denied review. (Doc. 68-3 at 63 and 86, Exh. 68.)

---

[6]    It appears counsel withdrew in May of 2006. *See* http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR1987-009953 (*last visited* Nov. 25, 2013).

Petitioner appealed, and the Arizona Supreme Court denied the Petition for Review on September 10, 2007. (Doc. 68-3 at 66, Exh. 68.)

On July 23, 2007, Petitioner filed a *pro se* Notice of Post-Conviction Relief with various attachments. (Doc. 68-4, Exh. 69(a).) He filed his ninth post-conviction relief petition on March 25, 2008 (Doc. 68-5, Exh. 69(b); Doc. 68-6, Exh. 69(c); Doc. 68-7 at 2-25, Exh. 69(d)), and filed a reply in support of the petition on May 22, 2008 (Doc. 68-7 at 26, Exh. 69(d)).   In these pleadings, Petitioner argued that actual innocence entitled him to relief under Arizona Rule of Criminal 32.1(h); he was denied his constitutional right to cross-examine James Harris; his prior conviction was inadmissible at trial and violated his double jeopardy rights; the trial court improperly considered aggravating factors and overlooked mitigating factors at sentencing; trial and PCR counsel was ineffective; the medical exam report of T.W. showed no evidence of trauma and was wrongfully withheld from the defense; and *Webb v. Lewis*, 44 F.3d 1387 (9th Cir. 1994) and *Crawford v. Washington*, 541 U.S. 36 (2004) entitled him to a new trial. In a minute entry filed on June 9, 2008, the Superior Court summarily denied relief. (Doc. 68-7 at 77, Exh. 70.) Petitioner filed a Motion for Rehearing and a supplement to that motion, which was denied in a minute entry filed on July 24, 2008. (Doc. 68-7 at 90, Exh. 70.) He appealed that decision, which the Appellate Court summarily denied as untimely on August 21, 2008. (Doc. 68-7, Exh. 71.)

On August 14, 2008, Petitioner filed a Motion to Request In-Camera Inspection by Court for Possible Electronic Recordings of Petitioner and his Ex-Wife Helen (Newsom) Jordon and to Reinstate PCR Action as a Notice of Post-Conviction Relief (Doc. 69-1, Exh. 72). The motion was construed as subsequent Rule 32 post-conviction relief proceedings, and the Superior Court construed denied relief in a minute entry filed on September 5, 2008. (Doc. 69-2, Exh. 73.) In doing so, the Superior Court reasoned, in part,

> Defendant also contends he is actually innocent. However, Defendant fails to present any evidence of innocence. Defendant fails to demonstrate by clear and convincing

1

2

> evidence that no reasonable fact-finder would not have found
> him guilty beyond a reasonable doubt, as required by Rule
> 32.1 (h), Arizona Rules of Criminal Procedure.

3

4

5

6

7

(Doc. 69-2 at 3, Exh. 73.) Petitioner moved for rehearing, which was denied in a minute entry filed on January 12, 2009. (Doc. 69-1 at 125, Exh. 72.) Thereafter, he filed a Petition for Review, which the Appellate Court denied on March 29, 2010. (Doc. 69-2, Exh. 74.) Petitioner appealed, and the Arizona Supreme Court denied review on August 6, 2010. (Doc. 69-2, Exh. 75.)

8

9

10

11

12

13

14

15

16

In March of 2010, Petitioner filed a Petition for Writ of Habeas Corpus in state court (Doc. 69-2, Exh. 76) and supplement (Doc. 77-1, Supp. Exh. 76), which was treated as a Notice of Post-Conviction Relief (Doc. 69-2, Exh. 77). Finding Petitioner's claims were precluded because they were untimely and/or successive, the Superior Court dismissed the notice on March 30, 2010. (Doc. 69-2 at 58, Exh. 77.) On April 15, 2010, Petitioner filed a Petition for Review (Doc. 77-1 at 34, Exh. 78), No. CA-CR 10-0291 PRPC, which the Appellate Court denied on September 21, 2011 (Doc. 69-2 at 60, Exh. 78). Petitioner appealed, and the Arizona Supreme Court denied the Petition for Review on February 2, 2012. (Doc. 69-2 at 61, Exh. 78.)

17

18

19

20

21

In November of 2010, Petitioner filed a post-conviction relief notice, his eleventh post-conviction relief petition, and a subsequent amended petition. (Doc. 69-3, Exh. 79; *see also* Doc. 69-4, Exh. 80.) He filed a second amended post-conviction relief petition on December 13, 2010. (Doc. 69-3, Exh. 79.) In a minute entry filed on December 28, 2010, the Superior Court dismissed the petition, reasoning:

22

23

24

25

26

27

> First, Defendant claims, pursuant to Ariz. R. Crim. P. 32.1 (g), that there has been a significant change in the law that would probably overturn Defendant's conviction or sentence. Specifically, Defendant contends *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), constitute a significant change of law that applies to his case, Defendant raised this exact claim in a previous petition for post-conviction relief filed on March 29, 2005. The Court rejected Defendant's claim and dismissed his petition on May 11, 2005. Defendant cannot raise this issue again in a successive petition for post-conviction relief. Ariz. R. Crim. P. 32.2(a)(2).

28

Second, Defendant claims, pursuant to Ariz. R. Crim. P. 32.1 (a), that Defendant was not given effective assistance of counsel during all of his previous proceedings. Defendant has raised this claim in many previous petitions for post-conviction relief. Defendant is precluded from continually raising this claim in successive petitions. Ariz. R. Crim. P. 32.2(a)(2).

Third, Defendant claims, pursuant to Ariz. R. Crim. P. 32.1(a), that the jury that convicted him was given insufficient jury instructions. Defendant raised this claim in a previous petition for post-conviction relief filed on March 29, 2005. The Court considered and rejected Defendant's claim resulting in a dismissal of the petition for post-conviction relief on May 11, 2005. Defendant cannot raise this issue again in a successive petition for post-conviction relief. Ariz. R. Crim. P. 32.2(a)(2).

Fourth, Defendant claims, pursuant to Ariz. R. Crim. P. 32.1(a), that the prosecutor engaged in conduct during Defendant's trial that amounted to prosecutorial misconduct. Defendant raised this issue in at least two previously filed petitions for post-conviction relief. Defendant raised this claim in a petition filed on August 14, 2008, which was dismissed by the Court on August 29, 2008. Defendant also raised this claim in a petition dated March 19, 2010, which was later dismissed by the Court on March 30, 2010. Defendant is precluded from continually raising this claim in successive petitions. Ariz. R. Crim. P. 32.2(a)(2).

Fifth, Defendant claims, pursuant to Ariz. R. Crim. P. 32.1 (g), that there has been a significant change in the law that would probably overturn Defendant's sentence or conviction. Specifically, Defendant claims that *Danforth v. Minnesota*, 128 S.CT. 1029 (2008), and *Crawford v. Washington*, 541 U.S. 36 (2004), constitute a significant change in the law that applies to his case. Defendant raised this claim in a previous petition for post-conviction relief filed on August 14, 2008. The Court considered Defendant's claim at that time and rejected it resulting in the petition being dismissed on August 29, 2008. Defendant is precluded from raising this issue again in a successive petition. Ariz. R. Crim. P. 32.2(a)(2).

Finally, Defendant claims that there are newly discovered material facts that would probably have changed the verdict or sentence in Defendant's case. Ariz. R. Crim. P. 32.l(e). Defendant also claims that he can prove by clear and convincing evidence that there is evidence to suggest that Defendant is actua1ly innocent of the crimes he was convicted of. Ariz. R. Crim. P. 32.1(h). Defendant fails to support these claims with sufficient facts, evidence, or law. Pursuant to Ariz. R. Crim. P. 32.5(a), "Facts within the Defendant's personal knowledge shall be noted separately from other allegations of fact and shall be under oath. Affidavits, records, or other evidence currently available to the Defendant supporting the allegations of the petition shall

> be attached to it. Legal and record citations and memoranda of points and authorities are required." Ariz. R. Crim. P. 32.5. Defendant has failed to allege any facts, affidavits, records, or other evidence to support his claims.
>
> Defendant fails to state a claim for which relief can be granted in an untimely Rule 32 proceeding.

(Doc. 69-4, Exh. 80.) Petitioner sought reconsideration, which was summarily denied in a minute entry filed on February 1, 2011. (Doc. 69-4, Exh. 80.) Petitioner filed a Petition for Review on February 14, 2011 (Doc. 77-1 at 12, Supp. Exh. 81; Doc. 69-4 at 8, Exh. 81), No. CA-CR 11-0106 PRPC, which the Appellate Court denied in or around April of 2013.[7]

Petitioner filed a Petition for Writ of Habeas Corpus in state court on June 8, 2012, and amended petition on June 15, 2012. (Doc. 69-4, Exh. 82.) The petition was treated as a post-conviction relief notice and dismissed. (Doc. 69-4, Exh. 83.) In its minute entry filed on June 27, 2012, the Superior Court summarized and concluded:

> The Defendant claims, pursuant to Ariz. R. Crim. P. 32.1(a), that his convictions and sentences were obtained in violation of his constitutional rights. Specifically, the Defendant alleges that:
>
> 1) The statutes requiring the Defendant to register as a sex offender are unconstitutional; 2) Punishing the Defendant for failure to register as a sex offender constitutes a violation of the ban on double jeopardy; 3) The Defendant entered into his plea agreement involuntarily and without knowledge of what the plea agreement contained; and 4) The Defendant received ineffective assistance of counsel.
>
> The Defendant cannot raise claims of this nature in an untimely or successive notice of post-conviction relief. *See* Ariz. R. Crim. P. 32.4(a). Additionally, the Defendant should have raised these claims on either direct appeal or in previous Rule 32 proceedings. Therefore, the Defendant is now precluded from raising the claim at this time. *See* Ariz. R. Crim. P. 32.2.
>
> A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order for the Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be

---

[7]    *See*  http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR1987-009953 (*last visited* Nov. 25, 2013).

granted in an untimely or successive Rule 32 proceeding. Rule 32.4(a).

(Doc. 69-4 at 41, Exh. 83.)

## II.     Federal Proceedings

### A.     Previous Habeas Proceedings

On August 7, 1995, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the District of Arizona. (Doc. 66-8 at 25, Exh. 30; D. Ariz. Doc. CV-95-01606-PHX-CAM (VAM).) Petitioner filed an amended petition on September 11, 1995, in which he raised the following issues:

> 1. Trial, sentencing and appellate counsel each rendered ineffective assistance.
>
> 2. Petitioner was denied access to an expert psychiatric witness due to his indigency.
>
> 3. Petitioner was punished multiple times for acts which should have been treated   as   one   offense,   the   sentences should   have   been   imposed   concurrently   rather   than consecutively, and Petitioner was re-indicted and tried on a count which had previously been dismissed with prejudice.
>
> 4. The trial court violated Petitioner's double jeopardy rights and the ex post facto clause by admitting evidence of his prior acts of abuse.

(Doc. 66-8 at 25, Exh. 31.)

On July 31, 1996, the Honorable Virginia A. Mathis issued a Report and Recommendation, recommending that the petition be dismissed because his claims were procedurally barred. (Doc. 66-8, Exh. 31.) In an order filed on September 30, 1996, the Honorable Charles A. Meucke adopted the report and recommendation, and denied the petition. (Doc. 67-1, Exh. 32.) Petitioner appealed the decision, and in a memorandum decision filed on August 12, 1998, the Court of Appeals for the Ninth Circuit affirmed in part and remanded in part. (Doc. 67-1, Exh. 34); *Walton v. Stewart*, 156 F.3d 1241, 1998 WL 482937 (9th Cir. 1998). In so doing, the Ninth Circuit reasoned:

Because both sides agree that the district court incorrectly concluded that Walton procedurally defaulted his claim of ineffective assistance of sentencing counsel, we reverse the district court's dismissal of that claim and remand for consideration on the merits.

Assuming, without deciding, that conflict of counsel in state habeas proceedings can constitute cause for failing to raise an issue in a post-conviction relief petition, it is clear from the district court's record that Walton was adequately represented by unconflicted counsel in his state habeas petition. On July 26, 1989, Walton moved to dismiss James H. Kemper of the Maricopa Public Defender's Office so that he could argue that Kemper was ineffective as trial counsel. The motion was granted the same day, and the superior court appointed John C. Williams to represent Walton. On August 2, 1989, the superior court summarily dismissed Walton's petition for post-conviction relief, a ruling adverse to Walton on the three claims that had been previously raised by Kemper.

This series of events would seem unfair to Walton were it not for the fact that on August 25, 1989, within thirty days of the dismissal, Williams filed a notice with the superior court that he "has failed to discover any additional colorable claims for relief and therefore will not file a supplement to the Petition for Post-Conviction Relief." This notice reveals two facts. First, Williams had reviewed Walton's case and concluded that there were no colorable claims to be raised beyond the three that Kemper had previously presented in the state habeas petition. Second, Williams obviously believed that had he discovered additional colorable claims, such as ineffective assistance of trial counsel, he would have been able to raise them in an amended petition for post-conviction relief. These facts convince us that Walton was represented by unconflicted counsel during his state habeas proceedings.

Regarding the remaining claims in Walton's petition, the district court correctly concluded that they were without merit or had been procedurally defaulted. Appellate counsel is not ineffective simply for failing to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989). "Under Arizona law, fundamental error review does not prevent subsequent procedural preclusion." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.1996). *See also Poland v. Stewart*, 117 F.3d 1094, 1105-06 (9th Cir.1997).

(*Id.*) The State of Arizona petitioned for rehearing, which the Ninth Circuit denied on September 24, 1998. (Doc. 67-1, Exh. 35.) The United States Supreme Court denied writ of certiorari on April 26, 1999. (Doc. 67-1, Exh. 36); *Walton v. Stewart,* 526 U.S. 1090 (1999).

On remand to the district court, Petitioner was appointed counsel. (Doc. 67-1 at 65, Exh. 37.) In addition to the filings of his attorney, Petitioner filed a series of *pro se* motions which included, among others, a Motion to Supplement Petitioner's Memorandum Regarding Further Proceedings, Motion to Request Consideration of Petitioner's Memorandum Letter Supplemented Regarding Further Proceedings, and Motion by Petitioner Pro Se to Supplement his Affidavit in Memorandum Regarding Further Proceedings. In an order dated August 28, 2000, the Honorable Earl H. Carroll, to whom the case had been reassigned, denied the motions and dismissed the petition. (Doc. 67-1, Exh. 37.) Petitioner filed an appeal, and the Ninth Circuit denied certificate of appealability on February 16, 2001. (9th Cir. Doc. No. 00-17005.) Petitioner sought reconsideration, which was denied on June 1, 2001. (Doc. 67-1, Exh. 37.)

On January 29, 2002, Petitioner filed an Application for Leave to File Second or Successive Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in the Ninth Circuit, which was denied on March 14, 2002. (9th Cir. Doc. 02-70153.) Petitioner filed a Petition for Writ of Habeas Corpus in the District of Arizona on January 16, 2003, which was dismissed without prejudice on January 27, 2013, due to his failure to first obtain authorization from the Ninth Circuit. (D. Ariz. Doc. CV-03-0111-PHX-EHC (LOA).) Petitioner filed an Application for Leave to File Second or Successive Petition for Writ of Habeas Corpus in the Ninth Circuit on June 12, 2003, which was denied on July 28, 2003. (9th Cir. Doc. 03-722880.) On November 18, 2009, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in the District of Arizona, which was dismissed without prejudice on April 2, 2010 at Petitioner's request. (D. Ariz. Doc. CV-09-02418-PHX-FJM (LOA).)

**B.    Second Federal Habeas Proceedings**

On August 25, 2010, Petitioner again filed an Application for Leave to File Second or Successive Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in the Ninth Circuit. (Doc. 69-4, Exh. 84; 9th Cir. Doc. 10-72604.) On March 16, 2011, the Ninth Circuit authorized Petitioner to file a Second or Successive Petition for Writ of

Habeas Corpus in the district court. (Doc. 1.) In doing so, the Ninth Circuit reasoned:

> We have reviewed the responses to the court's December 9, 2010 order, as well as the claims raised in petitioner's "Motion for Leave to Amend Petitioner's Reply to Respondents [sic] Response to Application to File Second or Successive Habeas Corpus Petition," and we grant the application for authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in the district court. The Clerk shall serve this order and a copy of the application on the district court.
>
> Petitioner shall submit a copy of this order with the 28 U.S.C. § 2254 habeas corpus petition to the district court. The district court may wish to appoint counsel to represent petitioner for this petition.

(Doc. 69-4, Exh. 84; 9th Cir. Doc. 10-72604.)

Having obtained such authorization, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 28, 2011 (Doc. 2), commencing the instant action. Petitioner filed a *pro se* amended habeas petition on July 14, 2011 (Doc. 11). Petitioner was appointed counsel (Doc. 9), and on January 31, 2012, counsel filed an amended habeas petition (Doc. 36). That same day, Petitioner also filed a *pro se* amended habeas petition. In an Order dated March 5, 2012 (Doc. 42), the Court struck the *pro se* petition. (Doc. 35.) Following Petitioner's request for new counsel, granted on March 5, 2012 (Doc. 42), Michael Bresnehan filed his notice of appearance as attorney of record on March 15, 2012 (Doc. 43). Petitioner, through counsel, filed a third amended habeas petition on September 14, 2012 (Doc. 65). In an Order dated October 30, 2012 (Doc. 85), the Court granted Petitioner, through counsel, leave to amend. Pursuant to that Order, the Fourth Amended Petition for Writ of Habeas Corpus (Doc. 86)[8] was filed. Respondents

---

[8] The Court notes that Petitioner entitles the Second, Fourth Amended Petition for Writ of Habeas Corpus (Doc. 86), as the "Third Amended Successive Petition for Writ of Habeas Corpus" in error. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (an amended petition supersedes the original or prior petition in entirety); *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

Given the volume of the previously filed exhibits, the Court permitted their incorporation to the amended petition. (*See* Doc. 85.) Petitioner's exhibits considered in support of the Fourth Amended Petition for Writ of Habeas Corpus (Doc. 86) include: Doc. 66 (Exh. 1-31), Doc. 67 (Exh. 32-61), Doc. 68 (Exh. 62-71), Doc. 69 (Exh. 72-90),

have filed a Response (Doc. 104, 108), and Petitioner, through counsel, has filed a Reply (Doc. 122).

**DISCUSSION**

## I.      Second or Successive Petitions pursuant to 28 U.S.C. § 2244

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs any second or successive petition filed after April 24, 1996, even in instances where the earlier habeas petition predated the AEDPA. *See United States v. Villa-Gonzalez*, 208 F.3d 1160, 1163 (9th Cir. 2000); *see also Cooper v. Brown*, 510 F.3d 870, 917 (9th Cir. 2007); *Lindh v. Murphy*, 521 U.S. 320, 322, 336 (1997). Acting as a gatekeeper under the AEDPA, the court of appeals must first authorize the filing of a second or successive petition before a petitioner may proceed. *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2796 (2010); *Thompson v. Calderon*, 151 F.3d 918, 920 (9th Cir. 1998) (en banc); *see also Woods v. Carey*, 525 F.3d 886, 888 (9th Cir. 2008); *Cooper v. Brown*, 510 F.3d at 918. "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a "prima facie showing" that is satisfies 28 U.S.C. § 2244. 28 U.S.C. §2244(b)(3). A "prima facie showing" means "simply a sufficient showing of possible merit to warrant a fuller … exploration by the district court." *Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc).

Therefore, if the court of appeals authorizes the filing of a second or successive habeas petition, the district court must then examine the petition and dismiss any claim that does not actually satisfy the requirements of 28 U.S.C. § 2244(b). 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section"); *Cooper v. Brown*, 510 F.3d at 917 ("The Ninth Circuit's authorization which enabled Petitioner to file a successive habeas petition pursuant to 28 U.S.C. § 2244(b)… does not relieve Petitioner of his

---

Doc. 70 (Exh. 91-117), Doc. 79 (Exhibits 118-128), Doc. 77-1 (Supp. Exh. 76, 78, 81); Doc. 130 (Exh. 130); Doc. 139 (Exh. 131); and Doc. 133 (Exh. 132).

burden of demonstrating compliance with those requirements…"). *See also Tyler v. Cain*, 533 U.S. 656, 661, n. 3 (2001) (bracket in original) ("A court of appeals may authorize such a filing only if it determines that the applicant makes a 'prima facie showing' that the application satisfies the statutory standard. § 2244(b)(3)(C). But to survive dismissal in district court, the application must actually 'sho[w]' that claim satisfies the standard"). The district court considers and addresses each claim contained in the second or successive petition to determine whether they were presented in a prior petition, and reexamines whether it satisfies the requirements of 28 U.S.C. § 2244(b) by conducting "a thorough review of all allegations and evidence presented by the prisoner." *Villa-Gonzalez*, 208 F.3d at 1165.

Under 28 U.S.C. § 2244(b)(1), the district court must first determine "whether a 'claim presented in a second or successive habeas corpus application' was also 'presented in a prior application.'" *West v. Ryan*, 652 F.3d 1071, 1077 (9th Cir. 2011) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005)). "If it has, 'the claim must be dismissed.'" *Id. See also Magwood*, 130 S. Ct. at 2795-96; *Tyler*, 533 U.S. at 661; *Cooper*, 510 F.3d at 918. "The Supreme Court has clarified that the term 'claim' means 'an asserted federal basis for relief from a state court's judgment of conviction.'" *West*, 652 F.3d at 1077 (quoting *Gonzalez v. Crosby*, 545 U.S. at 530). A claim "is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments ... [or] proved by different factual allegations." *Gulbrandson v. Ryan*, __ F.3d __, 2013 WL 5779188, *17 (9th Cir. 2013). Further, "[a] habeas petition is second or successive only if it raises claims that were or could have been adjudicated on the merits. A disposition is 'on the merits' if the district court either considers and rejects the claims or determines that the underlying claim will not be considered by a federal court." *McNabb v. Yates*, 576 F.3d 1028, 1029 (9th Cir. 2009) (internal citation omitted). "[T]he dismissal of a first petition with prejudice because of a procedural default (and a failure to show cause and prejudice) forecloses the possibility that the underlying claims will be addressed by a federal court.... Such a

dismissal therefore constitutes a disposition on the merits and renders a subsequent petition second or successive for purposes of 28 U.S.C. § 2244(b)." *Pizzuto v. Blades*, 673 F.3d 1003, 1007 (9th Cir. 2012) (quoting *McNabb*, 576 F.3d at 1029).

Second, for claims not previously presented, the district court considers whether the claims in the second or successive petition meet AEDPA's "stringent standards" under 28 U.S.C. § 2244(b)(2). *West*, 652 F.3d at 1077. The AEDPA requires dismissal unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

Under 28 U.S.C. § 2244(b)(2)(A), there are "three prerequisites for a permissible second or successive petition." First, "the claim must rely on a 'new rule of constitutional law'." Second, "the rule must have been 'made retroactive to cases on collateral review by the Supreme Court'." And third, "the claim must have been 'previously unavailable.' '[T]he Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive,' and it only does so 'through a holding.'" *Jones v. Ryan*, 733 F.3d 825, 843 (9th Cir. 2013) (bracket in original)(internal citations omitted).

Under 28 U.S.C. § 2244(b)(2)(B), a petitioner must demonstrate that his or her "claim (1) is based on newly discovered evidence and (2) establishes that he is actually innocent of the crimes alleged." *Pizzuto*, 673 F.3d at 1007 (quoting *King v. Trujillo*, 638 F.3d 726, 729 (9th Cir. 2011)). Evidence is "newly-discovered" where "it 'could not have been discovered previously through the exercise of due diligence.'" *West*, 652 F.3d at

1077 (quoting 28 U.S.C. § 2244(b)(2)(B)). To show that he or she is actually innocent, petitioner must demonstrate that "no reasonable factfinder would have found [petitioner] guilty of the underlying offense." *Pizzuto,* 673 F.3d at 1008. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *King*, 638 F.3d at 733. The question is not whether [a] jury… would have acquitted [petitioner], but whether, 'in light of the evidence as a whole ... no reasonable factfinder would have found [petitioner] guilty." *Pizzuto,* 673 F.3d at 1009.

## II.   Analysis

In the instant petition (Doc. 86), Petitioner raises three claims for relief: (1) the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);[9] (2) trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 695 (1984) for failing to undertake a reasonable pretrial investigation that would likely have unearthed exculpatory evidence;[10] and (3) a freestanding claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390 (1993).[11]

At the center of his claims, Petitioner argues that a newly discovered medical

---

[9]   "A *Brady* claim has three components. There must be (1) evidence that is exculpatory or impeaching (2) that is suppressed by the state and (3) resulting prejudice. … To determine whether prejudice exists, we look to the materiality of the suppressed evidence. *Brady* evidence is material if the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict… [Petitioner] needs to show only that the state court unreasonably decided that there was not a reasonable probability of a different result." *Aguilar v. Woodford*, 725 F.3d 970, 982-983 (9th Cir. 2013) (internal quotation marks and citations omitted).

[10]   "To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the deficient performance prejudiced the defense. … To establish prejudice, the defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Under this standard, we ask whether it is reasonably likely the result would have been different." *Gulbrandson*, 2013 WL 5779188 at *8 (internal quotation marks and citations omitted).

[11]   "[T]o be entitled to relief [under *Herrera*], a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). A finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence. *See United States v. Ratigan*, 351 F.3d 957 (9th Cir. 2003).

report establishes his actual innocence. Petitioner contends that the State withheld the results of a 1987 medical examination performed on T.W. which reveals no evidence of physical sexual trauma, "despite Ray Green's testimony and that of Detective Louis Marotta suggesting that Petitioner may have engaged in sexual intercourse with T.W.." (Doc. 86 at 54.) "At trial, the missing medical report would have further discredited Ray Green's testimony regarding what, if anything, illegal occurred at Mr. Green's mobile home. It would have also further discredited T.W., who apparently told others she had been subjected to sexual intercourse. The medical report would have been useful in cross-examining Dr. Harrison in the pretrial propensity hearing, and would have been useful at sentencing as well… [and] is the kind of clear and convincing evidence contemplated in 28 U.S.C. § 2244(b)(2)(B)(ii)." (Doc. 86 at 60.)

In turning to the evidentiary record on review, there appear to be two pertinent sets of records.

First, on June 19, 1986, a Child Abuse Report Form was completed in connection with an investigation of sexual assault by the Phoenix Police Department. (Doc. 74-8 at 20-27, Exh. 126(d).) The form reported that Abbie Walton, Petitioner's then wife, took T.W. to the Maricopa Medical Center (MMC), and a medical examination was conducted. The MMC contacted Debbie Marburry, a caseworker for Child Protective Services (CPS).[12] Progress notes and a Sexual Abuse Medical Report were completed by Dr. Gerard, who reported no physical findings of vaginal trauma. The report and notes indicated that T.W. stated she had performed oral sex on Petitioner. (Doc. 74-8 at 20-27, Exh. 126(d).)

Second, in 1987, Cindy Copp, a CPS caseworker, contacted the MMC for an evaluation of T.W. in connection with an investigation of sexual assault by the Glendale Police Department. (Doc. 108-8 at 26-33, Exh. H.) A Child Abuse Report Form was completed on June 18, 1987, which indicated that a medical examination of T.W. was

---

[12]     Upon contacting Marburry, the MMC was referred to Susan Young, the CPS caseworker assigned to the case. (Doc. 74-8 at 24, Exh. 126(d).)

conducted. Progress notes and a Sexual Abuse Medical Report were completed by Dr. Denise Schaffert,[13] assessed a normal physical examination. Specifically, upon conducting an examination of T.W.'s external genitalia, Dr. Schaffert found that T.W.'s hymen was intact and showed no signs of physical trauma. The report and notes indicated that T.W. stated that Petitioner attempted to have her perform oral sex on him and that she was not penetrated. (Doc. 108-8 at 26-33, Exh. H.)

### A.    28 U.S.C. § 2244(b)(1)

First, the claim presented in Petitioner's prior habeas proceeding is sufficiently related to the ineffective assistance of counsel claim raised here, precluding it from review under 28 U.S.C. § 2244(b)(1). Petitioner raised an ineffective assistance of trial counsel claim in his first habeas petition which was denied as procedurally barred (*see* Doc. 66-8, Exh. 31), and he now only seeks to present different evidence to support his claim. "But a claim 'is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments ... [or] proved by different factual allegations.'" *Gulbranson*, 2013 WL 5779188 at * 17 (quoting *Babbit v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999)); *see also Pizzuto*, 673 F.3d at 1008 ("[F]ederal courts will not consider new factual grounds in support of the same legal claim that was previously presented.").

> If Petitioner has previously adjudicated a claim of ineffective assistance of counsel in this Court, his pending claim of ineffective assistance of counsel must be dismissed. 28 U.S.C. § 2244(b). New factual grounds in support of a legal claim that has already been presented, i.e., ineffective assistance, are not sufficient to evade the mandatory dismissal requirement of 28 U.S.C. § 2244(b). *See Babbit*, 177 F.3d at 746. Petitioner already complained about his defense trial counsel's performance in a myriad of claims of ineffective assistance of trial counsel in his first habeas corpus petition … all of which were denied on the merits by this Court… The gravamen of the claim of ineffective assistance of trial counsel is the same, regardless of whether Petitioner presents new and different legal arguments or different factual allegations. *See Babbit*, 177 F.3d at 746.

---

[13]    The report indicates that Dr. Denise Schaffert and Dr. Bartley jointly conducted the examination.

25

*Cooper v. Brown*, 510 F.3d at 931.

Second, the thrust of Petitioner's attack on the undisclosed medical evidence presented in Petitioner's prior habeas proceeding is sufficiently related to the *Brady* claim raised in the instant petition, and is also precluded from review under 28 U.S.C. § 2244(b)(1). On January 26, 2000, on remand in Petitioner's prior federal habeas proceedings, Petitioner filed a "Motion by Petitioner Pro Se to Supplement his Affidavit in Memorandum Regarding Further Proceedings." (Doc. 67-1, Exh. 37; D. Ariz. CV-95-01606-PHX-EHC, Doc. 72.) Therein, Petitioner contended that

> the Glendale Police Department should have recorded its interview(s) or kept notes of its interview(s) with the alleged victims in this case; and that the victims alleged, being minors should have immediately been take[n] for psychological/ psychiatric and medical examination after having suffered an eight (8) hour trauma of assault as alleged in the instance.

(D. Ariz. CV-95-01606-PHX-EHC, Doc. 72 at 2.) Petitioner argued that he was entitled to relief because the prosecution failed to disclose such material evidence;

> [w]here there had been suppression of favorable evidence in violation of *Brady*, non-disclosed evidence is "material" if there is reasonable probability that, had the evidence been disclosed to defense, result of proceeding would have been different, and ["]reasonable probability" is probability sufficient to undermine confidence in the outcome.

(D. Ariz. CV-95-01606-PHX-EHC, Doc. 72 at 2 (quoting *U.S. v. Alzate*, 47 F.3d 1103 (11th Cir. 1995)). In denying his motion and rejecting his claim, the Court found Petitioner had not previously raised it in his habeas proceedings nor presented it in state court, and was unrelated to his remaining ineffective assistance of counsel claim.

Hence, Petitioner previously presented the same "basic thrust or gravamen" as the *Brady* claim raised here, namely, that had the prosecution disclosed medical evidence showing no physical trauma to the victim(s) at trial, the outcome would have been different. *See Morales v. Ornoski*, 439 F.3d 529, 532 (9th Cir. 2006) (denying claims in a second or successive petition that were "predicated on the same challenges [to the state court decision] that were previously considered" by the court). Further, the denial of the

26

motion along with the dismissal of the first petition with prejudice constituted a disposition on the merits. *See Pizzuto,* 673 F.3d at 1008; *Cooper v. Calderon*, 274 F.3d 1270, 1273 (9th Cir. 2001) (finding claims were previously presented where motions were used as a vehicle to bring a new claim that could have been raised earlier and petitioner was not denied the opportunity to litigate a claim that had been presented); *Henderson v. Lampert*, 396 F.3d 1049 (9th Cir. 2005). The Court recognizes that under certain circumstances, the Ninth Circuit has found that a *Brady* violation claim in a habeas petition may not be subject to AEDPA standards for second or successive petitions where the potential *Brady* evidence is disclosed after the first habeas petition was resolved. *See United States v. Lopez*, 577 F.3d 1053, 1064 (9th Cir. 2009); *see also King*, 638 F.3d at 729. However, this claim does not fall within that exception. Although Petitioner maintains he did not obtain the 1987 medical report until after the resolution of his first petition, it was not newly or diligently discovered. *See infra.*

Lastly, although Petitioner did not explicitly raise *Herrera* as the basis for his claim in his first habeas proceedings, he repeatedly raised freestanding claims of actual innocence based upon a lack of incriminating medical evidence. For instance, in denying a "Motion to Supplement Petitioner's Memorandum Regarding Further Proceedings" (D. Ariz. CV-95-01606-PHX-EHC Doc. 59), the Court provided,

> In this motion, Petitioner asks the Court to order DNA and other testing of himself and the victims arguing that in the absence of such testing there was insufficient scientific and medical evidence at trial to convict him. The sufficiency of the evidence upon which Petitioner was convicted has not previously been raised in the state courts and therefore has not been exhausted.

(Doc. 67-1, Exh. 37.) Similarly, in denying a "Motion by Petitioner Pro Se Requesting DNA Fingerprinting Regarding Further Proceedings" (D. Ariz. CV-95-01606-PHX-EHC Doc. 76), the Court reasoned that

> Petitioner again questions the sufficiency of the medical and scientific evidence and seeks a new trial or to add additional bases of habeas relief. These issues have not been presented

1

2

to the state court and are not relevant to Petitioner's remaining claim for ineffective assistance of sentencing counsel.

3    (Doc. 67-1, Exh. 37.)

4        Because Petitioner's claims presented in the second habeas petition were presented

5    in his prior federal habeas proceedings, the Court recommends that the petition be

6    dismissed pursuant to 28 U.S.C. § 2244(b)(1).[14]

7        **B.    28 U.S.C. § 2244(b)(2)**

8        Even if his claims were not precluded under 28 U.S.C. § 2244(b)(1), for the

9    reasons that follow, the Court concludes that Petitioner has not shown due diligence or

10   actual innocence under 28 U.S.C. § 2244(b)(2).[15]

11       **(1)    Due Diligence - 28 U.S.C. § 2244(b)(2)(b)(i)**

12       First, the factual predicate of Petitioner's claims is neither new nor was it

13   diligently discovered. Rather, the record persuades that the defense had obtained the 1987

14   medical report prior to trial. On September 19, 1988, Pamela Wiens, who was acting on

15   behalf of defense counsel, took a pretrial deposition of Cindy Copp. (Doc. 68-6 at 10,

16   Exh. 69(c).) The parties discussed the records that Copp had retrieved and reviewed at the

17   time of T.W.'s referral in 1987. Copp, not having reviewed the files from prior

18   investigations, appears to discuss her review of the 1987 medical report, the contents of

19   which Weins was familiar with;

20
21

[Pamela Wiens]. Okay. Were you aware when you talked to or at any time during your investigation, did you become aware of the prior CPS reports on [T.W.]?

22

[Cindy Copp]. Yes.

23

24

25

26

[14]    Petitioner's subsequent federal habeas actions were dismissed without a disposition on the merits and without prejudice. *See McNabb*, 576 F.3d at 1029 ("A habeas petition is second or successive only if it raises claims that were or could have been adjudicated on the merits…. A prior petition that has been dismissed without prejudice… leaves open the possibility for future litigation and has not, therefore, been adjudicated on the merits").

27

28

[15]    Because Petitioner's claims do not rest on a "new rule of constitutional law," 28 U.S.C. § 2244(b)(2)(A), Petitioner must show due diligence and actual innocence. *See* 28 U.S.C. § 2244(b)(2)(B); *Morales*, 439 F.3d at 531.

[Pamela Wiens]. Did you read them and review?

[Cindy Copp]. Yes. I brought them up on the computer and read them.

…

[Pamela Wiens]. Okay. Now, let me show you this. When you pull up there are things on the computer. Is this what you get, basically that print out?

[Cindy Copp]. Um, huh.

…

[Pamela Wiens]. Okay. So you don't get the actual, it's not like you go and pull reports?

[Cindy Copp]. No, no. And I think that those were probably all old enough referrals that they were long closed and wouldn't have been like I could have run next door to some body else's office and pulled a file. They were in closed in files some where, but

[Pamela Wiens]. Okay. Did you ever review the medical records? I think you said..

[Cindy Copp]. The (inaudible) exams?

[Pamela Wiens]. Yeah.

[Cindy Copp]. yeah.

[Pamela Wiens]. And as I recall there were no physical findings.

[Cindy Copp]. Yeah. what I believe they said is that they were consistent with um, the information provided and that was just oral sex.

[Pamela Wiens]. (inaudible)

[Cindy Copp]. There wouldn't be any signs.

(Doc. 68-6 at 29-32, Exh. 69(c).) During defense counsel's cross-examination of Detective Louis Marotta, both he and Marotta indicated they were aware of the 1987 medical report;

[Mr. Chornenky]. Okay. You are aware that [T.W.] was taken to the hospital for medical examination, correct?

[Louis Marotta]. Yes.

[Mr. Chornenky]. And you aware that [T.W.] had at least somewhere along the line made some reference to vaginal intercourse?

[Louis Marotta]. Which exam are we talking about?

[Mr. Chornenky]. We are talking about a medical exam. Do you know what -

[Louis Marotta]. From 1986 or the '87?

[Mr. Chornenky]. Either one. Did any of those -

[Louis Marotta]. She did, yes.

[Mr. Chornenky]. I'm sorry?

[Louis Marotta]. Yes, she did make some statements of that sort.

[Mr. Chornenky]. Of vaginal intercourse.

[Louis Marotta]. I'm not sure exactly what she said without referring to the report.

[Mr. Chornenky]. Did *any of those medical reports* come and show that there was evidence of vaginal intercourse?

[Louis Marotta]. No.

(Doc. 108-3 at 95, Exh. C.) (emphasis added).

Even if the 1987 medical report was not disclosed to the defense and is "new evidence," Petitioner has not shown that it could not have been discovered previously through the exercise of due diligence. In response, Petitioner (i.e., the affiant) maintains that

2. During 2002, the affiant first learned about a medical exam that had been performed on his daughter, [T.W.], shortly after her alleged molestation in June, 1987;

3. Affiant learned about the examination while speaking with [T.W.] in early 2000 during a visit by [T.W.] with affiant at the Arizona Department of Corrections facility in Florence, Arizona;

4. Affiant then began contacting Arizona State, Maricopa County, and various local agencies by mail, to attempt to acquire a copy of the of the report emanating from that examination. Through persistence affiant eventually acquired a copy of the medical report around early 2005. It arrived as part of Phoenix Police Departmental report. DR 87-141393

30

(the report connected with the investigation of 1987 alleged mobile home incident);

5. To the best of affiant's knowledge, the brief references at trial to a medical exam of [T.W.] was in reference to an exam that occurred in 1986 after the 1986 allegations, not the 1987 exam;

6, Petitioner's trial counsel informed petitioner that there was no 1987 exam of [T.W.], or medical report emanating from same. It was not until 2002 that the affiant learned otherwise.

(Doc. 70-7 at 13, Exh. 115; *see also* Doc. 86 at 55; Doc. 122 at 20.)

Considering the active and uninterrupted series of challenges Petitioner has made since his conviction, he has not shown that the 1987 medical report could not have been discovered years earlier. Petitioner's diligence is severely undermined by the fact that this evidence has been available since the time of trial. Petitioner was on notice in 1988 of the existence of "*medical reports,*" as discussed at trial. In Copp's Progress Notes, she remarked on June 16, 1987 that Jocelyn Vinson "will take girls to MMC for S/A exams" (Doc. 74-5 at 29, Exh. 126) and subsequently, "S/A exams scheduled for Friday." Those notes were submitted as an exhibit on September 22, 1988 (Doc. 74-5 at 21-32, Exh. 126), and the content of those notes were addressed at length in both pre-trial proceedings and at trial in 1988. (Doc. 66-2, Exh. 8; Doc. 108-5, Exh. E.) Despite any misbelief or misinformation, Petitioner has not offered any reason why he did not previously investigate or verify whether a medical report existed. Instead, Petitioner did not begin his pursuit of medical evidence until a decade after he was convicted. (*See e.g.,* Doc. 67-1, Exh. 37.)

In February of 2002, T.W. signed an affidavit in which she attested that "she was in fact, subject to medical examination involving the crime(s) of sexual conduct in this matter." (Doc. 67-4 at 19, Exh. 48.) Yet, it was not until 2004 that Petitioner submitted the requests that lead to the medical report he now presents. (*See* Doc. 108-8, Exh. H). Similarly, having obtained the report in 2004, Petitioner fails to explain why he did not present his arguments in federal court until 2010. Because Petitioners provides "no legitimate justification" for why he could not obtain the factual predicate of his claims

earlier, Petitioner has not demonstrated the diligence required under § 2244(b)(2)(B)(i). *Morales*, 439 F.3d at 533; *see also Bible v. Schriro,* 651 F.3d 1060, 1063, 1064 (9th Cir. 2011) (holding that a wait of ten years after an evidentiary request could have been brought was not diligent).

### (2)    Actual Innocence - 28 U.S.C. § 2244(b)(2)(b)(ii)

Notwithstanding the lack of due diligence exercised, Petitioner has not met his burden to demonstrate that the factual predicate of his claims, namely, the 1987 medical report, when viewed in light of the evidence as a whole, is sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty.

In his reply, Petitioner reiterates that "both Ray Green and Detective Moratta suggested, through their trial testimony, that Petitioner had engaged in sexual intercourse with T.W.." (Doc. 122 at 17-18.) "[T]he medical report would have severely weakened Ray Green's testimony regarding the mobile home incident" and "may very well have affected Dr. Harrison's conclusion." (Doc. 122 at 18.) Petitioner's arguments are simply unpersuasive. The record does not show that the report would have been meaningful to the defense or even germane. No criminal charge alleged T.W. had been sexually penetrated. In fact, Petitioner does not specifically cite *any* portion of the trial record containing such allegation.

T.W. did not testify or imply that she had been sexually penetrated in 1986 or 1987. (*See* Doc. 108-1 and 108-2, Exh. B.) Contrary to Petitioner's claim, Detective Louis Marotta did not testify to that effect either; rather, the trial transcript provides:

> [Louis Marotta]. I asked her if her daddy had put a finger inside her private spot and she said no.
>
> [Mr. Imbordino]. Did she ever indicate to you that he put his penis in her private spot?
>
> [Louis Marotta]. No.
>
> [Mr. Imbordino]. So you are familiar with the medical exmainations that are conducted in relation to these individuals, aren't you?
>
> [Louis Marotta]. Yes.

32

[Mr. Imbordino]. Do you expect to find – if a person had not put anything inside a little girl's vagina, would you expect there to be any medical evidence there?

[Louis Marotta]. No.

(Doc. 108-3 at 110-111, Exh. C.) Nor did Ray Green testify or clearly imply that Petitioner had sexually penetrated T.W.;

[Ray Green]. He told her to get on the bed. He proceeded to do what he was going to do.

[Mr. Imbordino]. What did he do to her, Mr. Green?

[Ray Green]. I know it wasn't too good.

[Mr. Imbordino]. Did he touch her?

[Ray Green]. Yes.

[Mr. Imbordino]. What with?

[Ray Green]. His hand.

[Mr. Imbordino]. His hand?

[Ray Green]. His hands.

[Mr. Imbordino]. What else?

[Ray Green]. He got on top of her. That much I do remember.

[Mr. Imbordino]. Okay. Did he touch her with his mouth?

[Ray Green]. Yes.

[Mr. Imbordino]. On her vagina?

[Ray Green]. Yes.

(Doc. 108-4 at 8, Exh. D.)

CPS caseworker Susan Young testified regarding her investigation of the allegations involving T.W. in 1986, yet also did not testify or clearly imply that T.W. had been or had reported being sexually penetrated. (Doc. 108-5 at 17, Exh. E.) She testified concerning her interview with T.W. and her following report. Young recounted that T.W. had stated that Petitioner had made her "perform sex on him." (Doc. 108-5 at 17, Exh. E.) She testified that T.W. stated Petitioner had "yelled out for [her] to have sex with others

33

in the house… [h]owever, no one was in the house." (Doc. 108-5 at 17, Exh. E.) Young testified that a medical exam was conducted in 1986, and the result of the exam was "negative." (Doc. 108-5 at 18, Exh. E.) In closing remarks, the defense discussed Young's testimony and the value of the medical examination results;

> Well, CPS worker Susan Young says no, we're not going to buy that story. We're going to get you a medical exam. We all heard things about medical exams. Apparently there had been some allegations about vaginal intercourse. Well, the medical exam didn't show that, and so the vaginal allegations disappeared. We don't have any here in this case, okay?

(Doc. 108-7 at 91, Exh. G.)

Lastly, in his reply, Petitioner cites to the sentencing Court's finding "that the physical and, particularly, emotional harm to the victim [was] substantial." (Doc. 66-3 at 50, Exh. 12; Doc. 122 at 18.) Yet, there is simply no foundation to interpret this as a finding of sexual penetration by the sentencing court. In short, Petitioner has failed to identify any portion of the trial record in which it is alleged that T.W. was sexually penetrated, or that she was subject to any form of sexual abuse that could be substantiated or controverted by the 1987 medical report. There is no testimony to be discredited. Rather, the only suggestion of "vaginal intercourse" at trial appears to stem from defense counsel, who then asked the jury to disregard any such allegation. (*See, e.g.*, Doc. 108-3 at 95, Exh. C; Doc. 108-7 at 91, Exh. G.) Consequently, the medical report neither explains nor diminishes the evidence of guilt presented at trial.

Petitioner urges the Court to consider the medical report in conjunction with "other evidence that has come to light, post trial." (Doc. 86 at 60.) Petitioner proffers post-trial recantations of T.W. and Ray Green, as well as new information concerning expert Dr. Jeffrey Harrison. The medical report however, even when coupled with this "other evidence," does not meet the standards necessary for a second or successive habeas corpus petition under 28 U.S.C. § 2244(b)(2)(b)(ii).

First, Petitioner offers an affidavit signed by T.W. on February 20, 2002. (Doc. 68-4 at 80, Exh. 69(a).) The affidavit avows that T.W. was "subject to a medical

34

examination involving the crime[s] of sexual in this matter." (Doc. 68-4 at 80, Exh. 69(a).) Petitioner next offers an affidavit signed by T.W. on June 24, 2006. (Doc. 68-4 at 79, Exh. 69(a).)  The affidavit provides that T.W. "unequivocally assert[s] that [she] was not and h[as] never been sexually molested or victimized by [her] father, and the truth can be fully verified from the medical report for which [her] father is currently imprisoned…. [A]s a frightened child, [she] gave false statements and testimony against [Petitioner] to avoid being place [sic] in 'permanent-foster-care' away from [her] parents and family, as described to [her] by Detective Marotta and the CPS caseworker." (Doc. 68-4 at 79, Exh. 69(a).) Petitioner additionally offers an affidavit signed by T.W. on February 24, 2007, T.W. (Doc. 68-4 at 78, Exh. 69(a).) The affidavit avows that T.W. nor K.V.I. "were never sexually victimized nor molested, at anytime, or in anyway, shape or form by" Petitioner. "[A]ny statement(s) or testimony given to the contrary [was] a complete lie."  (Doc. 68-4 at 78, Exh. 69(a).) Lastly, Petitioner cites to an affidavit signed by Ray Green on January 12, 2006. Green avows that neither he, nor Petitioner had ever engaged in "any type of sexual acts or, other abnormal affair(s) and/or acts" with T.W.. He further asserted that no such conduct ever took place in his trailer home. (Doc. 68-7 at 41, Exh. 69(d).)

Assuming their credibility, the statements presented in the affidavits are essentially no different from those made at trial over twenty-five years ago. T.W., then 12 years old, testified at trial on September 27, 1988. (Doc. 108-1, Exh. B.) She testified that she had told a series of individuals that she had not been sexually abused and had previously recanted. (Doc. 108-1 at 51.) For example, she testified that several months prior to trial, she had testified in the court that she had not been molested. (Doc. 108-1 at 51, 89, Exh. B.) T.W. testified to telling Detective Luis Marotta that she had lied about her father in order to get him to stop hitting her stepmother, Abbie Walton, and to get him out of the house. (Doc. 108-1, Exh. B.) In fact, at trial on September 27, 1988, she initially denied sexual abuse, then testified she had been molested. (Doc. 108-1 at 65-66, Exh. B.) On cross, defense counsel extensively questioned T.W. regarding the

inconsistencies in her testimony, and instances in which she recanted her allegations of molestation between 1986 and 1988. (Doc. 108-2, Exh. B.) Detective Marotta and Sergeant Linda Greer testified at trial on September 28, 1988. (Doc. 108-3, Exh. C.) They also testified regarding T.W.'s inconsistent statements and recanted allegations they encountered during their investigation. (*See, e.g.*, Doc. 108-3 at 89, Exh. C.) In its closing, defense redirected the jury to the inconsistencies in T.W's testimony and highlighted her prior recantation(s). (Doc. 108-7 at 91-92.)

Ray Green's recantation is equally unavailing. While on October 3, 1988, Green testified that he had "touched" or attempted to touch T.W. (Doc. 108-4 at 21, Exh. D), on cross examination, he conceded previously denying any involvement with T.W.;

> [Mr. Bernays]. Well, let me ask you this, Mr. Green. Do you remember this question being asked of you by Detective Marotta and this answer being given:
>
> > Question: Okay, did something happen between you and the little girl?
> >
> > Answer: Not really because I flat out turned it down.
>
> Do you remember giving him that answer?
>
> [Ray Green]. I was under stress.

(Doc. 108-4 at 21-22, Exh. D.) In fact, Petitioner argues that because Green testified to taking a plea deal, his credibility was necessarily at issue at trial "and, frankly, was patently unbelievable." (Doc. 86 at 51.)

Without question, credibility is crucial to a defense of actual innocence, because testimony of a victim may be enough to sustain a conviction for child molestation. *See Vega v. Ryan,* __ F.3d __ (9th Cir. Nov. 13, 2013.) (finding that where only the mother had testified that daughter had recanted to her, that evidence of multiple recantations was not merely cumulative) (citing *State v. Munoz*, 561 P.2d 1238, 1241 (Ariz. App. 1976)). However here, Petitioner offers nothing to demonstrate that the post-judgment recantations are more damaging or probative than those presented at trial. Instead, Petitioner proffers that

> during November, 2007, in correspondence between T.W. and Petitioner's then attorney, Nicole Farnum, T.W. refused to sign an updated affidavit. In that communiqué, T.W. essentially recanted her earlier recantations. It is unknown what T.W.'s current position is regarding the alleged molestations.

(Doc. 86 at 52.)[16]

Lastly, Petitioner argues that "Dr. Jeffrey Harrison has since lost his state credentials to practice psychology due to malfeasance, arguably casting doubt on his credibility." (Doc. 86 at 52.)  During an evidentiary hearing held on September 23, 1988, the State sought to introduce evidence at trial of prior sexual acts Petitioner had with two young girls in 1977. (Doc. 67-2 at 16, Exh. 48.) Dr. Jeffrey Harrison testified at that hearing "as an expert and testified [Petitioner] has a continuing propensity to commit these acts against young girls." (Doc. 67-2 at 17, Exh. 48.) Based on the hearing and the evidence presented, the Court allowed admission of 1977 acts at trial. (*Id.*) Harrison further testified at trial on October 3, 1988, as an expert regarding "child accommodation syndrome." (Doc. 108-4, Exh. D.) Petitioner now presents that on August 21, 2000, the Arizona Board of Psychologist Examiners revoked Dr. Harrison's license pursuant to a consent agreement. (Doc. 68-7 at 47, Exh. 69(d).) The record appears to indicate that Harrison entered into the consent agreement to revoke his license due to a sexual or romantic affair he had with one of his female patients in 1998. (Doc. 68-7 at 47, Exh. 69(d); Doc. 70-7, Exh. 117.) Other than a blanket challenge to his ethical character, Petitioner fails to show how these circumstances have any bearing on Harrison's ability to credibly testify as an expert in 1988 on the matters which were at issue at trial.

Petitioner argues that "[e]ven without the newly discovered evidence... it is

---

[16]      The defense also presented other theories to discredit T.W.'s testimony and challenge the evidence against Petitioner, including T.W. "felt a great responsibility for protecting her stepmother," she wanted her father out of the house and, after having "observed a TV show… on sexual abuse," T.W. falsely reported that Petitioner had abused her. (Doc. 108-1 at 27-28.) The defense argued "the allegations against him by [T.W.] and [K.V.I.] were a fabrication inspired by [T.W.]'s stepfather because, in his role as a confidential police informant, defendant had implicated the stepfather on a drug possession charge." (Doc. 66-4, Exh. 17.) The defense further "presented evidence to establish an alibi on the day of the incident involving [K.V.I.] and [T.W.]." (*Id.*)

remarkable that the jury did not find reasonable doubt." (Doc. 86 at 50.) Inherently, Petitioner challenges the legal sufficiency of the evidence presented at trial. However, "'actual innocence' means factual innocence, not mere legal insufficiency." *Morales,* 439 F.3d at 533. Considering the evidence as a whole, including the additional evidence cited above, Petitioner cannot demonstrate that the new facts "unquestionably" establish his innocence. *Morales,* 439 F.3d at 534. Although the testimony of the primary victim T.W. may have been inconsistent or incredible, the jury could have continued to believe that her testimony and the testimony of other prosecution witnesses were more accurate than that of the defense witnesses. The prosecution presented evidence that T.W. had given a detailed physical description of Ray Green, who she then was also able to identify in a photo line-up. Testimony was presented that T.W. was able to direct investigators to the mobile home where the crime was committed. Testimony was presented regarding the allegations of abuse of T.W. alleged and investigated in 1986. On September 28, 1988, K.V.I., who was then 14 years old, and K.V.II, then 11 years old, testified regarding the June 1987 incident, corroborating the allegations against Petitioner. (Doc. 108-3, Exh. C.) The prosecution also presented two other girls who testified that in 1977, while living with Petitioner and their mother, his then girlfriend, they were forced to perform oral sex on Petitioner. (Doc. 108-4, Exh. D; Doc. 66-4, Exh. 17.)

Petitioner has not demonstrated that the factual predicate for his claims could not have been discovered previously through the exercise of due diligence, and that if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2244(b)(2). Therefore, Petitioner has failed to satisfy the standards allowing review of a second or successive petition under 28 U.S.C. § 2244(b). Further, given the preceding discussion, if the Court were to reach the claims in the petition, it is clear that the alleged nondisclosure in no way amounts to a material *Brady* violation, nor supports a viable *Strickland* claim; Petitioner has not shown a reasonable probability that had any this evidence been offered at trial, the result of the

proceeding would have been any different. Likewise, because the evidence offered by Petitioner challenges only the legal insufficiency of the evidence produced at his trial, he fails to meet the standard for a "freestanding" actual innocence under *Herrera. See infra.*

### C. Application of AEDPA, *Schlup* and *Herrera*

Petitioner argues that because he has shown a credible claim of actual innocence, he may pass through the *Schlup* "gateway" and have his otherwise defaulted and time-barred *Brady* and *Strickland* claims heard on the merits. *See Schlup v. Delo*, 513 U.S. 298, 315-16 (1995). [17] However, the Court need reach whether Petitioner his claims are, in fact, procedurally barred, or whether he has demonstrated that a "fundamental miscarriage of justice" would result and can pass through the *Schlup* "gateway." *Cf. See House v. Bell*, 547 U.S. 518 (2006) (analyzing a *first* habeas petition seeking consideration of defaulted claims based on a showing of actual innocence under *Schlup* rather than AEDPA). For the proceeding reasons, Petitioner has not satisfied his burden under the AEDPA in order to allow review of his claims.[18]

Additionally, Respondents argue that Petitioner's claim under *Herrera v. Collins,*

---

[17]     The AEDPA requirements for a second or successive application are stricter than the *Schlup* standard in two ways. First, § 2244(b)(2)(B)(i) requires that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." There is no requirement under *Schlup* that the factual claim was not discoverable through the exercise of due diligence. Second, § 2244(b)(2)(B)(ii) requires that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish *by clear and convincing evidence* that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." (Emphasis added.) *Schlup* requires only that an applicant show that it is "more likely than not" that no reasonable fact-finder would have found him guilty.

*Cooper v. Woodford*, 358 F.3d 1117 (9th Cir. 2004).

[18]     Even if Petitioner surpassed the AEDPA standard, his circumstances would not satisfy the actual innocence standard under *Schlup*. For the reasons discussed, the medical report appears irrelevant to whether Petitioner committed his crimes and therefore do not prove factual innocence. To demonstrate actual innocence under *Schlup*, a petitioner must "show actual, factual innocence, not just legal insufficiency of the evidence." *United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003).

506 U.S. 390 (1993) is not cognizable in these proceedings. The United States Supreme Court has not held that a "freestanding" claim of factual innocence, i.e., one unaccompanied by a substantive claim of constitutional error in trial proceedings, provides a basis for federal habeas relief in a *non-capital* case. *See Herrera, supra; see also District Attorney's Office v. Osborne*, 557 U.S. 52, 71-74 (2009). In other words, the Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial, in which the death penalty was not imposed, would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *See House*, 547 U.S. at 554-55. Similarly, the Court also need not reach Respondents' argument because Petitioner has not satisfied his burden under the AEDPA to proceed on his *Herrera* claim.[19]

## III.   Evidentiary Hearing

"[S]ummary denial of [a second or successive petition] is proper when the [petition] and the files and records of the case conclusively show that the prisoner's [petition] does not meet the second or successive [petition] requirements." *Villa–Gonzalez*, 208 F.3d at 1165. Here, even assuming Petitioner's evidence is credible, he has not met his burden to show by clear and convincing evidence that a reasonable jury would not have convicted him. Accordingly, the Court does not find that an evidentiary hearing is warranted to consider the new evidence presented, nor is otherwise necessary for resolution of this matter. *See Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007); *Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

---

[19]    The threshold for any such claim, if it were recognized, would be "extraordinarily high." *Herrera*, 506 U.S. at 417. Even if Petitioner surpassed the AEDPA standard however, his circumstances would not satisfy the actual innocence standard under *Herrera*. "[T]he *Herrera* majority's statement that the threshold for a freestanding claim of innocence would have to be 'extraordinarily high,' contemplates a stronger showing than insufficiency of the evidence to convict." *See Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (internal citations omitted). The evidence offered by Petitioner does not affirmatively prove that he is innocent. The evidence offered by Petitioner challenges only the legal insufficiency of the evidence produced at his trial, which fails to meet the standard for a "freestanding" actual innocence under *Herrera*.

**CONCLUSION**

Petitioner has failed to show that he has satisfied the standards allowing review of a second or successive petition delineated in 28 U.S.C. §§ 2244(b)(1) and (2). Therefore, the Court recommends that the (Second) Fourth Amended Petition for Writ of Habeas Corpus (Doc. 86) be denied and dismissed with prejudice.

**RECOMMENDATION**

**IT IS RECOMMENDED** that the Fourth Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 86) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

///
///
///
///
///
///
///
///
///

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 4th day of December, 2013.

Honorable Steven P. Logan
United States Magistrate Judge