1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   Geary Wayne Walton,                )    No. CV-11-00578-PHX-ROS (SPL)
                                        )
10              Petitioner,             )    **ORDER**
                                        )
11  vs.                                 )
                                        )
12                                      )
    Charles L. Ryan, et al.,            )
13                                      )
                Respondents.            )
14                                      )
                                        )
15  _____)

16       For approximately twenty-five years, Petitioner Geary Wayne Walton has been

17  attempting to overturn his 1988 convictions for various sex offenses.  In this case, Petitioner

18  has again failed to establish he is entitled to any relief.  Therefore, the well-reasoned and

19  exhaustive Report and Recommendation ("R&R") issued by Magistrate Judge Steven P.

20  Logan will be adopted in full and the petition for writ of habeas corpus will be denied and

21  dismissed with prejudice.

22  **I. Standard for Review of R&R**

23       A district judge "may accept, reject, or modify, in whole or in part, the findings or

24  recommendations made by the magistrate judge."  28 U.S.C. § 636(b).  Where any party has

25  filed timely objections to an R&R, the district court's review of the part objected to must be

26  *de novo.  Id.*  The district court need not, however, review those portions of an R&R to which

27  no one objects.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003).

28

**II. Factual Background**

The R&R recounts the facts surrounding Petitioner's trial and his many subsequent attacks on his convictions. Petitioner does not directly object to the vast majority of those facts.[1] Rather, Petitioner's objections focus on the legal conclusions to be drawn from the facts. Thus, the factual background recounted in the R&R will be accepted and there is no need to recount that background again.

**III. Analysis**

Petitioner has three claims he wishes to pursue: 1) the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); 2) trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984) for failing to undertake a reasonable pretrial investigation that would have unearthed exculpatory evidence; and 3) a freestanding claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390 (1993). Because Petitioner is presenting these claims in a second-or-successive petition, he faces unique barriers in having this Court reach the merits of his claims. 28 U.S.C. § 2244(b). The Magistrate Judge concluded Petitioner could not overcome those barriers and recommended the petition be dismissed with prejudice. Petitioner objects, arguing the Magistrate Judge erred at every relevant step. Having reviewed the matter *de novo*, the Magistrate Judge was correct. But even assuming the Magistrate Judge erred in some respects, there is no plausible way to conclude Petitioner is entitled to continue to pursue his claims.

**A.  AEDPA Standard**

The starting point is determining what Petitioner must show to have his claims heard on their merits. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims asserted in a second-or-successive petition that were "presented in a prior [petition] shall be dismissed." 28 U.S.C. § 2244(b)(1). And even those claims "not presented in a prior [petition]" must be dismissed unless they meet one of two exceptions.

---

[1] Despite the absence of specific objections to the factual findings, Petitioner's objections to other portions of the R&R required this Court to review the entire file. Having done so, the R&R's factual recitals are accurate.

First, the claims can be heard if they rely "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2244(b)(2)(A). (Petitioner does not claim this provision has any application to his case.)  Or second, the claims can be heard if "the factual predicate for the claim[s] could not have been discovered previously through the exercise of due diligence" *and* "the facts underlying the claim[s], if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."   28 U.S.C. § 2244(b)(2)(B).

This difficult standard would seem to apply to all of Petitioner's claims.  But Petitioner is also asserting a claim of actual innocence which further complicates the matter. Asserting a claim of actual innocence often allows a federal court to reach the merits of claims it could not otherwise reach.  *See, e.g.*, *House v. Bell*, 547 U.S. 518, 536 (2006) (actual innocence may allow federal court to consider defaulted claims).  The "actual innocence" exception, however, only applies when the petitioner establishes "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  The Ninth Circuit has not yet addressed whether the "actual innocence" exception or the standard set forth in AEDPA applies when a court is assessing claims in a second-or-successive habeas petition.  *See Jones v. Ryan*, 733 F.3d 825, 841 n.5 (9th Cir. 2013).  A recent opinion from the Supreme Court, however, indicates that, for second-or-successive habeas petitions, the standard in AEDPA is the only relevant standard.

In *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), the Supreme Court addressed whether the statute of limitations in AEDPA could "be overcome by a convincing showing that [the petitioner] committed no crime." *Id.* at 1928.  The Supreme Court concluded actual innocence could act to overcome the "expiration of the statute of limitations." *Id.*  In reaching this conclusion, the Supreme Court addressed the argument that AEDPA's statute of limitations was not subject to an "actual innocence" exception because the limitations on

second-or-successive petitions established "Congress knew how to incorporate the [actual innocence exception into AEDPA] when it was so minded." *Id.* at 1933. The Supreme Court agreed Congress meant to "incorporate" and "*modify*" the actual innocence exception "with respect to second-or-successive petitions." *Id.* at 1934. That is, second-or-successive petitions making an actual innocence claim must "meet a higher level of proof" and "satisfy a diligence requirement" not applicable to first petitions. *Id.* at 1933. However, the fact that Congress modified the actual innocence exception with respect to second-or-successive petitions did not prevent the unmodified actual innocence exception from applying to first petitions and their applicable statute of limitations.

In light of *McQuiggen*, the AEDPA standard is the only relevant standard for second-or-successive petitions. Therefore, Petitioner's arguments that his "actual innocence" claim somehow excuses him from the AEDPA standard for second-or-successive petitions are not persuasive. (Doc. 143 at 15). To have his constitutional claims heard on their merits, Petitioner must satisfy AEDPA's higher level of proof and diligence requirements.[2]

## B. Petitioner's *Brady* and *Strickland* Claims Under AEDPA

Petitioner is attempting to pursue claims under *Brady* and *Strickland*. In order to do so, he must first establish these claims were not presented in his earlier petitions. If they were not, he must then show they are based on evidence that could not "have been discovered through the exercise of due diligence" and that he is actually innocent of the crimes for which he was convicted. *Babbitt v. Woodford*, 177 F.3d 744, 747 (9th Cir. 1999). Petitioner cannot meet any of these threshold requirements.

### i. Petitioner's Claims Were Previously Presented

---

[2] The fact that the Ninth Circuit granted Petitioner permission to file his second-or-successive petition does not prevent this Court from determining whether the statutory requirements for such a petition are actually met. *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000). As explained by the Ninth Circuit, after a petitioner is permitted to file a second-or-successive petition, the "district court must conduct a thorough review of all allegations and evidence presented by the prisoner to determine whether the motion meets the statutory requirements for the filing of a second or successive motion." *Id.*

1    The Magistrate Judge concluded Petitioner's *Brady* and *Strickland* claims were
2 previously presented and, therefore, barred by 28 U.S.C. § 2244(b)(1). Having reviewed the
3 matter *de novo*, the Court agrees.

4    The Magistrate Judge correctly identified the test for when a claim was previously
5 presented: "a claim is successive if the basic thrust or gravamen of the legal claim is the
6 same, regardless of whether the basic claim is supported by new and different legal
7 arguments . . . [or] proved by different factual allegations." *Gulbrandson v. Ryan*, 738 F.3d
8 976, 997 (9th Cir. 2013) (quotation omitted). Under this test, the Magistrate Judge correctly
9 found Petitioner previously presented both his *Brady* and *Strickland* claims and that
10 Petitioner is now simply trying to present different factual allegations to support them.
11 Therefore, the claims are barred.

12                          **ii. Petitioner was not Diligent**

13    Assuming Petitioner's *Brady* and *Strickland* claims were not previously presented,
14 Petitioner would have to show they are based on new evidence that he could not have
15 uncovered earlier. 28 U.S.C. § 2244(b)(2)(B)(i). The "new evidence" at the heart of the
16 current petition is a medical report from 1987. That medical report shows one of Petitioner's
17 victims was examined and did not show signs she had been vaginally penetrated. In addition
18 to the medical report, Petitioner also points to post-trial recantations by two individuals and
19 the fact that an expert witness lost his "state credentials to practice psychology"
20 approximately ten years after testifying in Petitioner's trial. Petitioner was not diligent in
21 pursuit of any of this evidence.

22    Beginning with the medical report, the Magistrate Judge correctly concluded
23 Petitioner was not diligent in locating it or presenting it in support of his claims. In fact, the
24 record establishes it is more likely than not that Petitioner and his counsel either had this
25 report during trial or knew of its existence at that time. At the very least, if Petitioner and
26 his counsel did not have the report prior to trial, the testimony at trial should have alerted
27 them to its existence. (Doc. 142 at 30). Waiting fourteen years after his conviction to pursue
28 the report was not reasonably diligent.

1    Petitioner has also not established he was diligent regarding the alleged post-trial

2    recantations or evidence regarding the testifying psychologist.  On the recantations, it is

3    difficult to determine when they could have been first uncovered, but they could have been

4    uncovered earlier than twenty years after trial.  And the discipline against the testifying

5    psychologist occurred in 2000. (Doc. 143 at 14).  Petitioner waited approximately a decade

6    to raise this issue.  That dely cannot be viewed as pursuing evidence with reasonable

7    diligence.

8        In sum, Petitioner was not diligent in uncovering *any* of the evidence he now seeks

9    to present.  Therefore, he has failed to meet a statutory requirement for this Court to consider

10   his claims. 28 U.S.C. § 2244(b)(2)(B).

11               **iii.  Petition Has Not Established Any Colorable Claim of Innocence**

12       Assuming the Court were to conclude, contrary to the facts, that Petitioner's claims

13   were not presented earlier and that Petitioner was diligent in obtaining the new evidence, the

14   next question would be whether the new evidence, in light of "the evidence as a whole,"

15   shows by "clear and convincing evidence" that "no reasonable factfinder" would have

16   convicted Petitioner. 28 U.S.C. § 2244(b)(2)(B).  The Magistrate Judge concluded the new

17   evidence did not meet this standard.  The Court agrees.

18       Petitioner's primary focus is on the 1987 medical report.  That medical report

19   indicates the victim had not been vaginally penetrated.  It is not clear why Petitioner believes

20   this medical report establishes his innocence.  At trial, there were no allegations Petitioner

21   vaginally penetrated the victim.  In fact, the trial transcript shows Petitioner's counsel argued

22   in closing that the alleged crimes did not involve "allegations about vaginal intercourse."

23   (Doc. 142 at 34).  In light of these facts, the Magistrate Judge provided a succinct refutation

24   of the medical report having *any* material impact on Petitioner's guilt:

25       Petitioner has failed to identify any portion of the trial record in which
         it is alleged that [the victim] was sexually penetrated, or that she was
26       subject to any form of sexual abuse that could be substantiated or
         controverted by the 1987 medical report.

27
28   (Doc. 142 at 34).  Simply put, the nature of Petitioner's crimes means the medical report does

1    not create any doubt about Petitioner's guilt.

2        Petitioner's other "new evidence" consists of post-trial recantations and subsequent

3    discipline against the psychologist who testified in his case. Post-trial recantations must "be

4    treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (O'Connor,

5    J., concurring). That skepticism is especially pronounced in this case because one

6    recantation comes from a victim and that victim made numerous conflicting statements prior

7    to trial. Thus, at trial the victim was pressed about her conflicting statements and her alleged

8    "new" recantation has little value.[3] As for the recantation by another witness, there is no

9    explanation for the witness's change of heart. The witness does not explain why he testified

10   differently at trial or why he waited an extraordinary eighteen years to recant his trial

11   testimony. *See Herrera*, 506 U.S. at 417 (noting recantations made eight years after trial are

12   suspect). The witness's recantation is not persuasive. Finally, the fact that the testifying

13   psychologist was disciplined over a decade after Petitioner's trial, for misconduct having

14   nothing to do with his testimony at Petitioner's trial, does not provide any meaningful

15   support to Petitioner's claim of innocence.[4]

16       Petitioner disagrees with this view of the "new evidence" but his arguments are not

17   persuasive. For example, Petitioner claims the 1987 medical report was crucial because if

18   it had been turned over, he would have been able to better cross-examine certain witnesses.

19   Given that the record shows Petitioner was not convicted for vaginally penetrating the victim,

20   the value of such additional cross-examination material is minute. In addition, the victim was

21   asked during trial about her inconsistent statements made before trial. Thus, there is very

22   little chance the medical report would have caused the jury to take a different view of her

---

23

24       [3] Petitioner admits he does not know the victim's "current position" regarding his
     guilt. (Doc. 143 at 12 n.1). In other words, she may have recanted her post-trial recantation.

25

26       [4] Petitioner also seeks leave to submit an affidavit explaining how one of his victims
     could have obtained certain information other than how she claimed she obtained it. (Doc.

27   148 at 2). There is no plausible way of viewing Petitioner's affidavit as "new evidence."
     Petitioner must have known long ago about the matters to which he avers. And even if the

28   Court were to consider the evidence, it has practically no material value.

1   testimony.

2       Viewed as a whole, the "new evidence" does not establish "no reasonable factfinder"

3   would have convicted Petitioner.  In short, Petitioner has not come close to meeting the

4   standard of pointing to "clear and convincing evidence" that, if proven, would establish his

5   innocence.  Accordingly, under the AEDPA standard applicable to his claims, Petitioner is

6   not entitled to pursue his constitutional claims.

7       **C. Petitioner's *Brady* and *Strickland* Claims Under *Schlup* Gateway**

8       If the AEDPA standard does not apply to Petitioner's claims, the only other possible

9   standard by which Petitioner might obtain review of his constitutional claims is the general

10  actual innocence exception.  That exception allows for review of claims when a petitioner

11  shows "it is more likely than not that no reasonable juror would have convicted him in the

12  light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (9th Cir. 1995).  This standard

13  is lower than the AEDPA standard  because it does not require Petitioner show he was

14  diligent in uncovering the new evidence and it requires only that it be "'more likely than not'

15  that no reasonable fact-finder would have found him guilty." *Cooper v. Woodford*, 358 F.3d

16  1117, 1119 (9th Cir. 2004).  Even under this lower standard, Petitioner is not entitled to have

17  his claims reviewed on the merits.

18      As addressed above, Petitioner's "new evidence" is incredibly weak and creates no

19  serious questions about his guilt.  That is, even with this "new evidence," reasonable jurors

20  would have convicted Petitioner.  Therefore, assuming the non-AEDPA standard applies,

21  Petitioner is not entitled to pursue his *Brady* and *Strickland* claims.[5]

22      **D. Freestanding Claim of Actual Innocence**

23      In addition to his *Brady* and *Strickland* claims, Petitioner also asserts a freestanding

24  claim of actual innocence.  Assuming such a claim is cognizable in federal habeas, and that

25  _____

26      [5] As noted by the Magistrate Judge, reaching the merits of Petitioner's claims would
    yield the same result.  (Doc. 142 at 38).  Neither the *Brady* nor *Strickland* claim would entitle
27  Petitioner to relief because he suffered no prejudice in connection with the alleged failure to
28  turn over the 1987 medical report.

it can be raised in a second-or-successive petition, Petitioner is not entitled to relief.

A freestanding claim of actual innocence is subject to an "extraordinarily high" burden. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). "A habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id.* Petitioner has not done so. Even under an unrealistically charitable view of Petitioner's evidence, that evidence does nothing more than infinitesimally "undercut the evidence at trial." *Id.* at 477. The new evidence does not "affirmatively . . . prove [Petitioner's] innocence." *Id.* Accordingly, even assuming the freestanding claim of actual innocence is cognizable, it fails.

**E. Evidentiary Hearing**

Petitioner objects to the Magistrate Judge's recommendation that the Court not hold an evidentiary hearing. Petitioner has fallen well-short of meeting any possible standard for holding an evidentiary hearing. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1934 (2013) ("Under AEDPA, a petitioner seeking an evidentiary hearing must show diligence and, in addition, establish her actual innocence by clear and convincing evidence."); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (before AEDPA "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts").

**IV. Summary**

Petitioner has no evidence that creates doubt about his guilt. Whether analyzing the path to the merits under the demanding standard of AEDPA or the less-demanding standard of *Schlup*, Petitioner is not entitled to have his constitutional claims considered on their merits. And even if they were so considered, they would fail. In addition, Petitioner's freestanding claim of actual innocence is not remotely convincing. The R&R will be adopted in full and the petition will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (**Doc. 142**) is **ADOPTED IN FULL**. The Fourth Amended Petition for Writ of Habeas Corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

1       **IT IS FURTHER ORDERED** a Certificate of Appealability and leave to proceed *in*

2 *forma pauperis* on appeal is **DENIED** because Petitioner has not made a substantial showing

3 of the denial of a constitutional right.

4       **IT IS FURTHER ORDERED** the Motion to Seal (**Doc. 146**) is **GRANTED**.  The

5 "Motion for Payment Time" to be filed under seal (**Doc. 147**) is **DENIED AS MOOT**.

6 Counsel will be paid in due course now that the case is closed.  This Order shall not be

7 sealed.

8       **IT IS FURTHER ORDERED** the Motion to Expand Record (**Doc. 148**) is

9 **GRANTED**.

10       DATED this 30th day of April, 2014.

Roslyn O. Silver
Senior United States District Judge